### CHAMBERS *v*. CUNNINGHAM.

### Opinion delivered March 13, 1916.

1. USURY—FINDING OF CHANCELLOR.—The finding of the chancellor that certain notes did not bear a usurious rate of interest, held to be sustained by the proof.

2. ADMINISTRATION—APPOINTMENT OF ADMINISTRATOR—NECESSITY.—The appointment of an administrator by the probate court is conclusive of the necessity for administration.

3. ADMINISTRATION—ASSIGNMENT TO ADMINISTRATOR.—A. was indebted to B. at the time of B.'s death. Thereafter A. executed a renewal note to B.'s widow and son. The latter then assigned the same to B.'s administrator. *Held*, A. could not question the administrator's authority to accept the assignment, and would be protected from further suit by a decree in an action by the administrator against him.

Appeal from Conway Chancery Court; *J. M. Martin*, Special Chancellor; affirmed.

The Appellants, *pro sese.*

1. The demurrer should have been sustained as appellees' pleading and proof both show that the suit was not prosecuted in the name of the real parties in interest. Kirby's Digest, § 5999; 51 Ark. 293. The property was never the property of the deceased. The mortgage and notes were payable to M. J. and G. L. Cunningham, Jr. and were never in the hands of the deceased, nor assets of his estate. 18 Cyc. 191, p. 1014.

2. The assignment was a subterfuge to get the protection of the constitution barring testimony as against administrators. 35 Ark. 274; 37 *Id*. 200. It was a fraud. 33 *Id*. 468; 16 Cyc. 722, 785; 68 Ark. 495. Before the assignment appellants had the right to show usury. 37 Ark. 195. The administration is only a scheme and device to hide the usury. 62 Ark. 97; 39 Cyc. 957, 918.

3. Usury was proven. Kirby's Digest, § 5389, 5390; 62 Ark. 97. The renewal of a usurious contract is itself usurious. 39 Cyc. 1003, 1005; 62 Ark. 376; 111 *Id.* 597.

4. Letters of administration were improperly issued; there were no debts to be paid. 35 Ark. 274; 37 *Id.*, 200; 34 *Id.* 394; 41 *Id.* 92.

5. There was no consideration except the old usurious debt. 53 Ark. 457; 39 Cyc. 997, 918.

*Sellers & Sellers,* for appellee.

1. The demurrer was properly overruled. 83 Ark. 495. There were some debts to be paid. The probate court is the sole judge of the necessity of administration. 7 Ark. 48; 46 *Id.* 373; 23 *Id.* 78. No scheme nor device was proven. A proper assignment was alleged and proven, and that the administrator was the owner and holder of the mortgage and notes.

2. Almost the entire testimony for appellants was inadmissible. Kirby's Digest, § 3093; 83 Ark. 210; 80 *Id.* 277; 79 *Id.* 69; 13 Enc. of Ev. 400. No usury was shown by any competent evidence.

3. The decree is correct on the merits. No fraud was shown and no usury proven. The appellants' rights are protected by the decree and it is amply supported by the testimony. His findings are, at least, not against the preponderance of the competent testimony.

McCULLOCH, C. J. This is an action instituted in the chancery court of Conway County by G. L. Cunningham, Jr., as administrator of the estate of G. L. Cunningham, deceased, against the defendants, J. B. Chambers and others, to foreclose a mortgage on real estate. The mortgage was executed on March 3, 1911, by J. B. Chambers and his wife, to G. L. Cunningham, Jr., (individually) and his mother, M. J. Cunningham, to secure a debt of $2,738.90 evidenced by five promissory notes, each for the sum of $547.78, bearing interest at the rate of 6 per cent per annum from date until paid. Subsequent to that date letters of administration on the estate of G. L. Cunningham, Sr., were issued to G. L. Cunningham, Jr.,

and said notes were by the payees transferred to said administrator.

M. J. Cunningham and G. L. Cunningham, Jr., are respectively the widow and only heir of G. L. Cunningham, deceased, and it is undisputed that said notes were executed to them by J. B. Chambers in renewal of certain notes which Chambers had previously executed to the senior Cunningham. There had been no administration on the estate of said decedent at the time of the execution of said notes, but, as before stated, letters of administration were issued to the plaintiff subsequent to that date and prior to the commencement of this suit. The evidence shows that there was no indebtedness of the estate of Cunningham, deceased, except a small amount of household expenses which had been paid.

The defendants challenge the authority of the administrator to sue on the notes, but the principal defense offered is that the original debt to Cunningham, Senior, was usurious, and that these notes, being executed in renewal thereof, are likewise void on account of usury. It is alleged in the answer, and the testimony of J. B. Chambers tends to prove, that the original indebtedness to G. L. Cunningham, Sr., was evidenced by notes bearing 10 per cent. interest from date until paid, and that in addition thereto there was no oral agreement between the parties that the maker of the notes was to pay interest at the rate of 25 per cent. per annum. The testimony of Chambers, if accepted as true, also shows that the notes were in fact paid. He testified that he began dealing with G. L. Cunningham, Sr., in the early part of the year 1901, and executed two notes, payable in the fall, one of which was for $50 and the other for $682.89; also that he executed a new note on January 14, 1902, for $876.65, and another note on March 17, 1904, for $767.70, and another on January 17, 1905, for $587.36. He claims that the last two notes were executed for accumulated usurious interest, and that he had paid, from time to time, more than enough to satisfy the original debt and lawful interest.

It appears from the testimony that some time prior to the year 1911 G. L. Cunningham, Sr., died, leaving his widow and the plaintiff as his sole heir at law. The plaintiff is a young man and knew nothing at all about the affairs of his father, but in going through the papers found the notes executed by defendant Chambers, aggregating, with accumulated interest, the amount of the notes in suit. The old notes were secured by a mortgage on land and on a gin outfit. He testified that he conferred with Chambers several times about the payment of the debt, and that Chambers asked for time and promised to make payments in the following fall, but failed to do so. Another creditor of Chambers sued out an attachment and levied it on the gin property, and, according to the testimony of plaintiff, this circumstance was reported to him by Chambers who stated that the property belonged to the Cunningham estate by reason of the mortgage, and that it was their duty to protect it. In February, 1911, Chambers executed to young Cunningham and his mother a bill of sale for the gin outfit at an estimated price of $1,500, to be credited on the old indebtedness, but on March 3, 1911, the gin property was reconveyed by Mrs. Cunningham and her son to Chambers, who then executed the new notes now in controversy for the amount of the original debt and accumulated interest. The old notes were not introduced in evidence, and the only testimony given on that subject is that of the plaintiff who testified in general terms that the amount of the new notes was the aggregate of the old notes and accumulated interest. He denies that anything was said between him and Chambers about the notes being usurious until after the commencement of this suit.

Chambers testified that young Cunningham came to see him about the notes and figured up the amount to be $4,238.90; that he informed Cunningham of the usurious character of the transactions with the latter's father and insisted that he had paid all that was justly due, and asked Cunningham to accept the new notes for one-half of the amount of the old ones with accumulated interest,

which offer he said was declined, and that he then executed the bill of sale for the gin, and subsequently the mortgage in controversy. There is an important inconsistency in the testimony of Chambers, for he claims that Cunningham figured up the notes to be $4,238.90, and insisted upon payment of the whole sum, expressly refusing to accept any less, and yet the fact is undisputed that the new notes were executed for amounts aggregating only $2,738.90. The consideration of $1,500 for the bill of sale of the gin outfit would, if deducted from the amount which Chambers says was asserted against him, leave the amount of the notes, but the proof is that the gin outfit was reconveyed to Chambers, so that credit does not stand on the amount of the indebtedness. The statement of Chambers to the effect that he informed young Cunningham of the usurious character of the old indebtedness is corroborated by the testimony of his wife and his daughter-in-law, but it is contradicted by the testimony of another witness, who, so far as the record shows, has no interest in this controversy. There is also in the record the testimony of two or three witnesses who say that the senior Cunningham during his lifetime told them that he was charging Chambers 25 per cent. interest.

(1) We pretermit any discussion of the question whether or not the testimony of Chambers was rendered incompetent because of the fact that it related to transactions with the decedent, inasmuch as a ruling on the motion to strike it out was not pressed before the lower court. Treating the testimony as competent, we think it can not be said that the finding of the chancellor was against the preponderance of the evidence. Proof of the fact that usury was actually charged depends wholly on the testimony of Chambers himself and upon the additional testimony of two or three parties to the effect that Cunningham told them that he was charging Chambers 25 per cent. interest, which, under the circumstances which the witnesses say these statements were made by the elder Cunningham, is so unreasonable as to be entitled to very

little, if any, credit. Now, the fact that Chambers waited until after the death of the elder Cunningham, and in the meantime executed new notes for the debt without saying anything about the usurious character of the indebtedness, is a strong circumstance against crediting his testimony, especially when he claims that he had in fact paid a sufficient amount to the elder Cunningham to discharge the indebtedness. The chancellor had the right, after having reached the conclusion that Chambers had kept silent so long a time and in the meantime executed new notes without saying anything about the defenses which he now asserts against the old indebtedness, to take those circumstances to the discredit of Chambers in weighing his testimony; nor can it be said that the chancellor erred in reaching the conclusion that Chambers had not, as he claims, said anything about the usurious character of the indebtedness to young Cunningham when he executed the new notes. Upon the whole, we are not convinced that the plea of usury is established by the preponderance of the testimony, and it therefore becomes our duty to leave the finding of the chancellor on that issue undisturbed.

(2-3) In answer to the contention that plaintiff has no right to sue for the reason, in the first place, that there being no indebtedness of the estate there was not authority for the issuance of letters of administration, and next that the administrator had no authority to accept an assignment of the notes, it may be said that the appointment of the administrator by the probate court was conclusive of the necessity for administration, (*Stewart v. Smiley, Administrator,* 46 Ark. 373); and that the defendants are not in a position to question the authority of the administrator to accept an assignment of the notes. The notes and the mortgage were in fact executed by Chambers and wife to Mrs. Cunningham and her son, and they assigned them to the administrator, and the decree protects the defendant from any further suit on the debt.

It appearing that the finding of the chancellor is not against the preponderance of the evidence as to the only real issue in the case, it follows that the decree must be affirmed, and it is so ordered.